IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| JAMMIE S. SIEMER, | ) | CASE NO. 3:20-CV-01419 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| Defendant. | ) | |

**Introduction**

Before me by referral[1] is an action under 42 U.S.C. § 405(g) by Jammie S. Siemer seeking judicial review of the 2020 decision of the Commissioner of Social Security that, after remand from this Court, denied Siemer's 2013 application for disability insurance

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge Jeffrey J. Helmick in a non-document order entered June 29, 2020.

1

benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Under my initial[5] and procedural[6] orders, the parties have filed briefs,[7] together with supporting fact sheets and charts.[8] The parties have met and conferred with the objective of reducing and/or clarifying the issues.[9] The parties have participated in a telephonic oral argument.

For the following reasons, I will recommend that the decision of the Commissioner be reversed and the matter remanded for further proceedings consistent with this opinion.

---

[2] ECF No. 1. Siemer's application was initially denied in 2015 but a 2016 decision of the Appeals Council remanded the matter for another hearing. See, ECF No. 12 at 2 (citing record). The application was again denied at the rehearing in 2017, which decision the Appeals Council in 2018 declined to review. *Id*. In 2019, this Court reversed the Commissioner's decision and remanded the matter. *Id*. The matter was then denied at the second rehearing in 2020 and Siemer did not seek review by the Appeals Council but instead filed the present action. *Id*.
[3] ECF No. 9.
[4] ECF No. 10.
[5] ECF No. 6.
[6] ECF No. 11.
[7] ECF Nos. 12 (Siemer); 16 (Commissioner).
[8] ECF No. 12, Attachment (Siemer); 13 (Supplement, Siemer); 16, Attachment (Commissioner).
[9] ECF No. 17.

**Facts**

**A.    The ALJ's Decision**

Siemer, who was 53 years old at the time of the 2013 rehearing,[10] is a high school graduate[11] and is the currently unmarried widow of a deceased insured worker.[12] She previously worked as an STNA,[13] LPN[14] and Unit Clerk/Cardiac Monitor.[15]

Siemer has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; coronary artery disease; hypertension; status post bariatric surgery with a history of obesity; degenerative joint disease of the right knee, status post arthroscopic meniscectomy and chondroplasty; and mental impairments variously diagnosed as dysthymic disorder, depression, anxiety, and post-traumatic stress disorder (PTSD) (20 C.F.R. 404.15209 (c) and 419 (c)).[16] Siemer also has non-severe impairments and additional issues that were judged to be "not medically determinable impairments,"[17] such as carpal tunnel syndrome,[18] Addison's disease[19] and fibromyalgia.[20]

---

[10] Tr. at 95.
[11] *Id*. at 1897.
[12] *Id*. at 8.
[13] State Tested Nurse's Assistant.
[14] Licensed Practical Nurse.
[15] Tr. at 30.
[16] *Id*. at 9.
[17] *Id*.
[18] *Id*.
[19] *Id*. at 9-10.
[20] *Id*. at 10.

3

The ALJ found that none of Siemer's impairments or combination of impairments met or medically equaled a listing.[21]

After considering the evidence, the ALJ concluded that Siemer has the residual functional capacity (RFC) to perform light work with the following exceptions:

Occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional stooping and kneeling; no crouching; occasional crawling; only occasional exposure to extreme cold or heat, fumes, odors, dust or gasses; no exposure to workplace hazards such as dangerous machinery and unprotected heights; capable of understanding, remembering and carrying out simple tasks that are not fast paced meaning the pace of productivity is not dictated by an external source over which she has no control; capable of simple work related decision making; and can adapt to a routine work setting where changes occur occasionally.[22]

In formulating this RFC, the ALJ reviewed the medical and opinion evidence, finding, *inter alia*, that the opinions of Siemer's treating physician, Dr. Peter White, M.D., were entitled to "some weight," concluding that "Dr. White's opinions contain multiple inconsistencies," "appear to be based largely on the claimant's subjective complaints of pain," and are contradictory.[23] Further, the ALJ assigned "some weight" to the 2013 and 2018 opinions of state agency reviewing psychologists, reasoning that these sources did not examine Siemer nor did they review evidence submitted after September 2018 that showed Siemer was capable of functioning independently, performing most chores around the house, and engaging in activities such as shopping and managing her money and medications.[24]

---

[21] *Id*. at 10-14.
[22] *Id*. at 14.
[23] *Id*. at 27-29.
[24] *Id*. at 26-27.

After determining that Siemer was not capable of performing any of her past relevant work,[25] the ALJ, considering Siemer's age, education, work experience and RFC, and relying on the testimony of a vocational expert (VE), determined that she was capable of doing the following three jobs performed at the light, unskilled level: (1) merchandise marker, (2) sorter and (3) office helper.[26] Therefore, Siemer was found not disabled.[27]

**B.  Issues for Judicial Review**

Siemer raises two, related issues for judicial review:

> 1.  The ALJ failed to apply the controlling weight test and also failed to give good reasons for according less than controlling weight to Dr. White's opinion.
> 2.  The ALJ failed to properly evaluate the opinions of the state agency non-examining psychologists.[28]

Dr. Peter White, M.D. became Siemer's primary care physician beginning in September 2013 and gave three medical source statements – twice on December 12, 2014 and on September 23, 2016.[29] After acknowledging Dr. White as a treating source, the ALJ summarized those statements and concluded that they were entitled to only some weight.[30] The ALJ's reasoned that:

> Dr. White's opinions contain multiple inconsistencies, such as the claimant's reporting multiple complaints of pain, but [then] not having any complaints of pain at later medical appointments. Additionally, the undersigned notes that the opinions offered by Dr. White appear to be based largely upon the claimant's complaints of pain, as opposed to

---

[25] *Id*. at 30.
[26] *Id*. at 31.
[27] *Id*. at 32.
[28] ECF No. 12 at 2.
[29] Tr. at 27-29.
[30] *Id*. at 29.

objective medical evidence of record. Continuing, the undersigned notes that Dr. White offers contradicting statements that the claimant is capable of low stress work, while at the same time suggesting that she would be off task and absent from work frequently. However, the undersigned notes that despite the contradictions in his medical source statements, his opinion that the claimant is capable of light work is consistent with the treatment notes from the St. Rita's Medical Center and from the claimant's own statements in the adult disability and function reports, which indicate that she is able to do light housework despite some limitations in functioning. Therefore, the undersigned gives the opinions of Dr. White some weight.[31]

Siemer here argues that the ALJ failed to follow the established two-step analysis of *Gayheart*[32] by beginning her consideration of Dr. White's opinions with the first step inquiry as to whether they are entitled to controlling weight.[33] In so doing, she argues that "the ALJ skipped right past the first, most important step, when evaluating Dr. White's treating source opinions."[34] The Commissioner, for his part, contends that while *Gayheart* " seems to require" a distinct two-step analysis, the ALJ here "met [*Gayheart s*] intent" and thus any error was harmless.[35]

Further, Siemer asserts that the ALJ failed to provide good reasons for assigning less than controlling weight to Dr. White's opinions.[36] Specifically, she maintains that the ALJ has not shown how Dr. White's functional opinions were somehow improperly based on her own subjective complaints.[37] Rather, "the ALJ seems to be inferring that simply

---

[31] *Id.*
[32] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).
[33] ECF No. 12 at 12-13.
[34] *Id.* at 13.
[35] ECF No. 16 at 8.
[36] ECF No. 12 at 13.
[37] *Id.*

because Ms. Siemer complained of pain, [then] Dr. White's opinions must have been based on [those] comments rather than his years-long extensive treatment of Ms. Siemer."[38]

In addition, Siemer states that the ALJ does not reasonably explain how Dr. White's opinions are contradictory.[39] To that point, she contends that an ability to do low stress work isn't, *per se*, contrary to being off task or absent. "Just because an individual can engage in low stress work doesn't mean that the individual will not have issues with absenteeism or get distracted."[40] Siemer points out that the state agency psychologists opined that Siemer would need a work setting where there is some flexibility as to pace and the scheduling of breaks.[41]

The Commissioner counters that the state agency psychologists did not state, as did Dr. White, that Siemers would be absent two to four days per month, but instead spoke in terms of providing scheduled breaks and having flexibility as to scheduling work.[42]

As to the second issue for judicial review, Siemers asserts that the ALJ erred in diminishing the weight assigned to the opinions of the state agency psychologists on the grounds that they did not examine Siemer and because they did not have access to evidence after September 2018.[43] Siemer contends that the ALJ's reasoning here was "conclusory" since it did not point to anything developed after September 2018 that contradicted the state

---

[38] *Id*.
[39] *Id*. at 14.
[40] *Id.*
[41] *Id*. (citing record).
[42] ECF No. 16 at 6.
[43] ECF No. 12 at 16 (citing record).

agency opinions.[44] Moreover, she argues, even if evidence after September 2018 showed she has improved, the ALJ failed to show why the state agency opinions prior to that time were not deserving of greater weight as to the period prior to September 2018.[45]

The Commissioner relies heavily on the argument that evidence developed after September 2018 shows that Siemer is able to function independently, perform most household chores, shop, and independently manage her money and medications.[46] In addition, the Commissioner notes that treatment notes show that Siemer's counseling and medication for depression and anxiety have resulted in "moderate" improvement in her ability to concentrate and persist on tasks.[47]

**Analysis**

This matter is considered under the well-established substantial evidence standard, which does not need to be re-stated here. As the parties acknowledge, the treating source issue is considered under the standard existing at the time this matter was heard by the ALJ.

As to the initial issue of the weight given to Dr. White's opinion, or perhaps more accurately as to whether the clear *Gayheart* two-step analytical process was followed, I acknowledge that this is treacherous territory for the reviewing court. Although *Gayheart*,

---

[44] *Id*.
[45] *Id*. at 17.
[46] ECF No. 16 at 9.
[47] *Id*.

8

and the underlying regulations are, on their face, quite clear, in practice navigating the path through individual cases has been less so.

To begin, in *Gayheart* the Sixth Circuit defined a two-step analysis for evaluating opinions of treating sources. In the first step, the ALJ must afford the opinion controlling weight if two conditions are met: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in [the] case record.[48] In the second step, if controlling weight is not given, the ALJ must determine what weight to assign based on the length, frequency, nature and extent of the treatment relationship, as well as the treating source's area of specialty, and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence.[49]

As I have previously stated in earlier opinions, the court in *Gayheart*" emphasized that the regulations require two distinct analysis, applying two separate standards in assessing the opinions of treating sources."[50] The ALJ only considers the step-two factors if the ALJ first applies the step-one factors and decides not to give the treating source opinion controlling weight.[51]

---

[48] *Gayheart,* 710 F.3d at 376 (quoting 20 C.F.R. 20 C.F.R. § 404.1527(c)(2)).
[49] *Id*.
[50] *Aiello-Zak v. Comm'r of Soc. Sec.*, 47 F.Supp. 3d 550, 555 (N.D. Ohio 2014).
[51] *Gayheart*, 710 F.3d at 376.

In applying the step one analysis, the ALJ is required to provide "good reasons" for discounting the weight given to a treating source opinion.[52] The reasons must be supported by evidence in the case record and be sufficiently clear to any subsequent reviewer the weight given to the opinion and the reasons for that weight.[53] As I have also stated before, "[t]he clear teaching of the Sixth Circuit is that the ALJ must perform that analysis of the evidence and so provide a clear roadmap for the court to follow in reviewing that analysis. Anything less deprives the claimant of due process and requires that the matter be remanded."[54] Indeed, as the Sixth Circuit recently emphasized, courts "do not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from [ALJ's] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."[55]

Nevertheless ALJs became accustomed to collapsing the two-step *Gayheart* analysis into a single step, and the Commissioner became equally accustomed to arguing that this analytical flaw was only a harmless error. This approach resulted in a frequently confusing series of cases on review.

---

[52] *Id*.
[53] *Id.* (quoting SSR 96-2p).
[54] *Thomas v. Comm'r of Soc. Sec.*, 2013 WL 5353317, at *6 (N.D. Ohio Sept. 24, 2013).
[55] *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 554-55 (6th Cir. 2020).

On one hand,[56] in the 2017 case of *Kutsick v. Commissioner*[57] I took note of the fact that although I had long believed that ALJs should have adopted and followed a template for completing a valid *Gayheart* two-step analysis that would remove any doubt as to completing each distinct step as required, "my views have not proved widely persuasive."[58] Instead, as multiple Sixth Circuit precedents then established, an ALJ's decision that does not strictly follow *Gayheart* will not be disturbed in the case of a lesser weight assigned to the opinion of a treating source where that source opinion is shown to be "inconsistent with the other evidence of record or the assessment relied on subjective symptoms without the support of objective findings."[59]

However, as noted above, the Sixth Circuit in *Hargett* recently re-emphasized that it will require a remand when the ALJ do not "comprehensively," by means of a logical evidentiary bridge, set forth good reasons for the weight assigned.

But while the ALJ did acknowledge Dr. White as a treating source, she otherwise failed, at step one, to set forth good reasons for not giving his opinions controlling weight and then totally failed to undertake the step-two analysis that focuses on such factors as the length and nature of the treating relationship and Dr. White's area of specialization.

---

[56] In using this time-worn image, I am calling to mind President Harry Truman who, when asked what he most wished for, answered that he would for once like to meet a one-handed economist. See, http://www.economist.com/business/2003/11/13/the-one-handed-economist
[57] 2017 WL 413995 (N.D. Ohio Jan. 31, 2017).
[58] *Id*. at *3.
[59] *Id.* (citation omitted).

Such analysis here would be critical in assessing whether, as the Commissioner claims, Dr. White merely accepted and repeated Siemer's subjective complaints, thus providing a reason to discount his medical opinion, or if Dr. White had an independent basis, developed over time, using his professional expertise and as a result of knowing the claimant, for crediting those complaints as valid.

Further, the ALJ's analysis that Dr. White's opinions are contradictory for the reason that an ability to perform low stress work is inconsistent with a likelihood of absenteeism is not a good reason. While a vocational expert may well conclude that no jobs are available for a person with a higher propensity for absenteeism, it does not logically follow that a medical professional, who is not an expert on the job market, could conclude that, medically, Siemer is both able to do low stress work and would be subject to being absent.

Accordingly, the absence of the required step one analysis leaves me without the clear roadmap the regulations require and that Siemer is entitled to, thus rendering the decision unsupported by substantial evidence. Therefore, as the Sixth Circuit stated in *Hargett*, a remand is required.

That said, and as to the second issue for judicial review, I find Siemer's point well taken as to the effect, if any, of post-2018 evidence on the opinions of state agency sources. Any analysis of that question on remand should not end with the conclusion that the failure to consider such evidence totally taints opinions given prior to that date but should consider whether those opinions remain valid for a closed period prior to 2018.

12

## Conclusion

For the reasons stated, the decision of the Commissioner that denied benefits to Jammie S. Siemer should be reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO RECOMMENDED.

Dated: July 13, 2021                                        s/William H. Baughman Jr.
                                                                                       United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[60]

---

[60] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh g denied*, 474 U.S. 1111 (1986).